IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INOLA DRUG, INC., individually and on behalf of all other similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) EXPRESS SCRIPTS, INC., ) a Foreign Corporation, ) ) Defendants. ) | Case No. 06-CV-117-GKF-TLW |

**OPINION AND ORDER**

This matter comes before the court on plaintiff's Motion for Partial Summary Judgment [Doc. No. 84], defendant's Motion for Summary Judgment [Doc. No. 93], plaintiff's Motion for Class Certification [Doc. No 81] and defendant's Motion to Strike Class Allegations [Doc. No. 138]. For the reasons set forth below, plaintiff's Motion for Partial Summary Judgment is denied; defendant's Motion for Summary Judgment is granted in part and denied in part; plaintiff's Motion for Class Certification is denied; and defendant's Motion to Strike Class Allegations [Doc. No. 138] is denied as moot.

**I. Background/Procedural History**

Plaintiff Inola Drug, Inc. ("Inola") is a retail pharmacy. Defendant Express Scripts, Inc. ("ESI") is a pharmacy benefit manager ("PBM"). PBMs contract with third-party payors or health plan administrators such as insurers, HMOs and employers to facilitate delivery of prescription drugs to the health plan members or other persons to whom the third party payors provide prescription drug benefits. PBMs also assist third party payors and health plan administrators by adjudicating claims for prescription drug benefits submitted by pharmacies,

acting as intermediaries between the third party payors and pharmacies in providing pharmacy benefits.  In this capacity, they create pharmacy networks by negotiating with retail pharmacies that agree to accept defined reimbursement rates for prescriptions for health plan members.   One typical component of PBM pricing and reimbursement is the Average Wholesale Price ("AWP").  Periodically, manufacturers announce changes in the AWP for the brand drugs they sell.  Those changes are compiled by pricing services such as First DataBank, Medi-Span and Redbook, which in turn provide the pricing information to subscribers on a periodic basis.  For brand-name drugs, the defined reimbursement in a pharmacy/PBM contract is usually a negotiated dispensing fee plus the lesser of a negotiated discount off a benchmark published AWP or the pharmacy's cash price.       Inola, as a member of the Pharmacy Providers of Oklahoma ("PPOk"), entered into a contract with ESI (the "PPOk Agreement"), pursuant to which it participated in various pharmacy networks, including the Anchor, Mini-Anchor and Stratus networks.  Inola alleges ESI has breached the contracts by failing to fully and timely reimburse it for prescription medications.         With respect to the Anchor and Stratus networks, the central dispute is whether the PPOk Agreement requires ESI to update AWP information in "real time."    ESI receives AWP updates on a daily basis from First DataBank, but with respect to the Anchor and Stratus networks, a time lag of approximately 30 hours exists between the time when ESI receives the AWP updates and when those updates are uploaded to the systems.

With respect to the Mini-Anchor system, which is used for Department of Defense ("DOD") claims,  ESI provides updates weekly and monthly, rather than daily.  Inola asserts these delays breach the contract.

The procedural history of this case is somewhat convoluted.  In its First Amended

Complaint, Inola asserted six claims: Count I–violation of Oklahoma's Third Party Prescription Act ("OTTPA"); Count II–breach of contract; Count III–misrepresentation/suppression; Count IV–unjust enrichment/constructive trust; Count V–unfair business practices; and Count VI–injunctive relief. Plaintiff also sought class certification. Defendant filed a Motion to Dismiss the First Amended Complaint. [Doc. No. 30]. In response, plaintiff filed a "Dismissal of Certain Counts Without Prejudice" [Doc. No. 121], wherein it attempted to dismiss the OTTPA and unfair business practices claims (Counts I and V) and a portion of the claim for injunctive relief (Count VI), to the extent it sought enforcement of the OTTPA. Defendant did not object to plaintiff's motion for voluntary dismissal. [Doc. No. 130]. The court entered an order granting plaintiff's motion to dismiss Counts I and V and the portion of Count VI related to the OTTPA. [Doc. No. 132]. Further, the court dismissed Count III (misrepresentation/suppression) without prejudice to refile, finding plaintiff had not adequately pled the time, place and identity of the party making the alleged misrepresentations or adequately pled duty. [*Id.*] The court also dismissed Count IV (unjust enrichment/constructive trust) on the basis that it was dependent on Count III, which had been dismissed. [*Id.*] The court gave plaintiff leave to file a Second Amended Complaint. [*Id.*]

Before the court entered its order on the motion to dismiss, plaintiff filed its Motion for Partial Summary Judgment on a portion of its breach of contract claim [Doc. No. 84][1] and defendant filed a Motion for Summary Judgment on the claims for breach of contract, unjust

---

[1] Although the parties have entered into a number of contracts through the years, plaintiff contends its breach of contract claim is based solely on the PPOk Agreement. Plaintiff also appears to take the position that its remaining claims, too, arise from the parties' dealings related solely to the PPOk Agreement. [Doc. No. 122, Plaintiff's Response to Defendant's Motion for Summary Judgment, pp. 1-9].

enrichment/constructive trust and injunction. [Doc. No. 93]. Defendant's summary judgment motion did not address the misrepresentation/suppression claim.

In its Second Amended Complaint [Doc. No. 135], plaintiff amended its allegations regarding the misrepresentation/suppression claim and the claim for unjust enrichment and constructive trust. While defendant's previously-filed cross motion for summary judgment addressed plaintiff's unjust enrichment/constructive trust claim, it did *not* address the misrepresentation/suppression claim, nor has defendant filed a supplemental motion for summary judgment or dismissal. Thus, the viability of the misrepresentation/suppression claim is not at issue.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995). The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id*.

## III. Undisputed Material Facts

1. Plaintiff Inola owns and operates a retail pharmacy in Inola, Oklahoma. [Doc. No. 84,

Plaintiff's Statement of Facts, Statement No. 1; Doc. No. 93, Defendant's Objections/Answers to Plaintiff's Statement of Fact No. 1].

2. Defendant ESI is a pharmacy benefit manager ("PBM") . [Doc. No. 84, Plaintiff's Statement No. 2; Doc. No. 93, Defendant's Objections/Answers No. 2].

3. At the time Drew Turner acquired Inola in May 1999, Inola was operating under a 1995 agreement with ESI. [*Id.,* Statement No. 11, citing Ex. 5].

4. Eventually Inola joined PPOk and on November 1, 2001, accepted the pharmacy contract PPOk negotiated with ESI in 2001. [*Id.,* Statement No. 13, and Ex. 4; Doc. No. 84, Plaintiff's Statement Nos. 5-6].

5. The PPOk Agreement provides the pharmacy will receive payments for pharmacy services in accordance with a net payment schedule, less applicable copayments received by the pharmacy. [Doc. No. 93, Ex. 4, Terms and Conditions, §3.A]. Claims are to be paid twice monthly; approved claims are paid an average of 30 days from the date of acceptance. [*Id.*].

6. The PPOk Agreement does not define or even reference AWP. [*Id.,* Ex. 4].

7. The PPOk Agreement defines "Provider Manual" as "a written description of practices, policies, rules and procedures provided by ESI for Pharmacies dispensing Covered Medications to Members. The Provider Manual may be revised from time to time by ESI in its sole discretion." [*Id.,* Ex. 4, Terms and Conditions, §1]

8. The PPOk Agreement incorporates by reference the Provider Manual. [Doc. No. 93, Plaintiff's Statement No. 11; Doc. No. 93, Defendant's Objections/Answers No. 11].

9. Section 9C of the PPOk Agreement Terms and Conditions addresses amendment of the agreement and the Provider Manual. Under §9C, amendments or modifications of the agreement

must be in writing and signed by both parties.  However:

> ...ESI may amend the Agreement to comply with any changes required or suggested by the appropriate regulatory authorities in the course of discharging their responsibilities under applicable laws and regulation.  ESI shall furnish Provider with written notice of such amendments.  In the event any such amendment constitutes a material change to the terms of the Agreement that is unacceptable to Provider, Provider may elect to terminate this Agreement by giving written notice of such election to terminate to ESI within 20 days of receipt of amendment, and such termination shall be effective no earlier than 60 days after receipt of written notice by ESI.

[Ex. 3 to Doc. No. 93.]    With respect to the Provider Manual, §9C states:

> Provider further agrees that ESI may amend the Provider Manual and all policies and procedures of ESI, in its sole discretion, and such amendment shall not require consent of Provider or a Pharmacy.

 [*Id*].  Section 9C does *not* require ESI to give notice of Provider Manual amendments to providers. [*Id.*].

      10.  The PPOk Agreement is governed by Missouri law. [*Id.,* ¶9F].

      11. At the time the PPOk Agreement was executed, the Provider Manual stated:

> ...Express Scripts reimbursement is based on the lower of Average Wholesale Price (AWP) less the contracted discount or baseline price (as calculated by First DataBank) less the contracted discount for the specific network; MAC or submitted Express Scripts will utilize First Databank or other comparably reliable sources as determined by Express Scripts, and will update drug information on a *weekly basis*....

[Doc. 94, Ex. 14, p. ESI-401-00005391] (emphasis added).

      12.  In 2002, ESI purchased additional services from First DataBank that allowed it to receive daily updates to drug information, including AWPs. [Doc. No. 93, Statement of Fact No. 20;  Doc. No. 122, Plaintiff's Response to Statement No. 20].  At this point, ESI  voluntarily began updating AWP and other drug information on a daily basis. [Doc. No. 93, Statement of Fact No. 21; Doc. No. 122, Plaintiff's Response to Statement No. 21].  Several months after it

began providing daily updates, ESI revised the reimbursemet description in the Provider Manual as follows:

### Online Reimbursement Calculation

...Express Scripts' reimbursement is based on the lower of:

- Average Wholesale Price (AWP) less the contracted discount baseline price (as calculated by First DataBank) less the contracted discount for the specific network;

- MAC or submitted cost plus the contracted dispensing fee for that network or U&C

Whichever is lowest. [*sic.*] Express Scripts will utilize First DataBank or other comparably reliable sources as determined by Express Scripts, and will update drug information on a *daily* basis....

[Doc. No. 93, Defendant's Statement No. 22, citing Ex. 13, p. ESI-401-00004416; Doc. No. 122, Plaintiff's Response to Statement No. 22] (emphasis added).

11. ESI receives daily, weekly and monthly AWP updates from First DataBank. [Doc. No. 84, Plaintiff's Statement No. 12; Doc. No. 93, Defendant's Objections/Answers No. 12].

12. ESI adjudicates pharmacy claims using three different systems or processes–Anchor, Mini-Anchor and Stratus. The Anchor system or process is used to adjudicate commercial claims, the Mini-Anchor system or process to adjudicate Department of Defense claims and the Stratus system or process to adjudicate workers compensation claims. [Doc. No. 84, Plaintiff's Statement Nos.19-20; Doc. No. 93, Defendant's Objections/Answers Nos. 19-20].

13. Anchor and Stratus are both updated with the same AWP information. [Doc. No. 84, Plaintiff's Statement, ¶21]. ESI typically receives First DataBank files every business day between 7 p.m. and 2 a.m. The files are unzipped by 7 a.m. the next morning, any errors are resolved with First DataBank, and the file loading process begins at 8 p.m. [Doc. No. 93,

Defendant's Objections/Answers No. 21, citing Ex. 30, Deposition of Demetrius Sanders, p. 82:2-6; p. 85: 17-23; Doc. No. 93, Defendant's Statement of Fact No. 32; Doc. No. 122, Response to Statement No. 32]. Data is loaded within a 22-29 hour window, but load times do not necessarily represent effective AWP times for reimbursement, because the majority of AWP information loaded is future dated and is not to be effective for reimbursement until some future set date. [*Id.,* Sanders Deposition, p. 166: 16-167:1 and Defendant's Statement of Fact No. 33; Doc. No. 122, Response to Statement No. 33].[2]

14. The lag time or "window" between the time a drug file is received an loaded appears to be customary and necessary in the industry. [Doc. No. 93, Statement of Fact No. 35; Doc. No. 122, Response to Statement No. 35].[3]

15. In December 2003, Inola and ESI amended the 2001 PPOk Agreement to add the Department of Defense ("DOD") TRICARE Retail Pharmacy Program ("TRRx") as an additional network under the 2001 PPOk Agreement. [Doc. No. 93, Defendant's Statement No. 25; Doc. No. 122, Plaintiff's Response Brief, Response to Statement No. 24].

16. ESI began processing claims for the DOD TRRx in June 2004. [Doc. No. 93, Defendant's Statement No. 27; Doc. No. 122, Plaintiff's Response to Statement No. 27.]

---

[2]ESI, citing the testimony of *Inola's* expert, contends that because of the number of future AWP's, there is no significant difference between daily and weekly updating procedures, and weekly updating is sufficient to capture most AWP changes. [Doc. No. 93, Defendant's Objections/Answers, No. 21, citing Ex. 35, Deposition of Lonny Wilson, at 67-68, 64:11-13; 66:1-4; and 124:1-16, and Defendant's Statement Nos. 33-34.]. Plaintiff claims this statement is "immaterial," and further asserts, without submitting evidentiary support, that delay in updating the AWP values results in "substantial damage to the class of pharmacies." [Doc. No. 122, Response to Statement Nos. 33-34].

[3]Plaintiff asserts industry practice is immaterial because the contract provisions control the parties' obligations. [Doc. No. 122, Plaintiff's Response to Statement No. 35].

17. To accommodate DOD protocol, ESI created a new internal processing system for DOD claims. [Doc. No. 93, Defendant's Statement No. 28; Doc. No. 122, Plaintiff's Response to Statement No. 28]. ESI also developed separate internal policies and procedures for updating drug information used for DOD claims in order to be compatible with DOD's vendor, Emdeon. [Doc. No. 93, Defendant's Statement No. 29; Doc. No. 122, Plaintiff's Response to Statement No. 29].[4] ESI updates the AWP information contained in the Mini-Anchor system associated with DOD claims weekly and monthly rather than daily. [Doc. No. 84, Plaintiff's Statement, ¶22; Doc. No. 93, Defendant's Objections/Answers, ¶22, and Statement of Undisputed Facts No. ].

18. Plaintiff's expert, Lonny Wilson, acknowledged ESI's internal daily, weekly and monthly updating practices meet or exceed industry updating standards. [Doc. No. 93, Defendant's Statement No. 37, citing Ex. 35, Wilson Deposition at 122:6-125:5; Ex. 34, 95:12-13; 113:18-114:30, Ex. 24 at 41-21; 84:5-10; Doc. No. 93, Plaintiff's Response to Statement No. 37].

## IV. Analysis

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for partial summary judgment on its claim for breach of contract with respect to the DOD TRRx program. Plaintiff asserts ESI's practice of updating the AWPs weekly rather than daily violates the PPOk Agreement. While the agreement itself is silent on the question of AWP updates, the manual, which is incorporated by reference in the agreement, provides "drug information will be updated on a daily basis." [Provider Manual, §2.3]. This

---

[4]Plaintiff asserts ESI's reasons for updating AWP's on DOD claims weekly rather than daily are immaterial. [Doc. No. 122, Plaintiff's Response to Statement Nos. 29-30].

language is the basis of plaintiff's claim.

The PPOk Agreement provides that ESI may amend the Provider Manual at any time in its sole discretion, without the consent of the pharmacy. [PPOk Agreement, ¶9C]. Further, while ESI is required to notify the pharmacy of changes in the PPOk Agreement itself, there is no notice requirement with respect to changes in terms of the Provider Manual. [*Id*].

Under Missouri law, which governs the PPOk contract, "sole discretion" provisions are valid and enforceable, provided the party with discretion acts in good faith. *See Cordry v. Vanderbilt Mortg. & Fin., Inc.,* 370 F.Supp.2d 923, 927 (W.D.Mo. 2005), *aff'd* 445 F.3d 1106, 1110 (8th Cir. 2006). Under Missouri law:

> When a decision is left to the discretion of one party, the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion.

*Id.*

Defendant submitted uncontroverted evidence which establishes weekly updating was implemented to accommodate DOD's vendor. Plaintiff has submitted no evidence of bad faith or abuse of discretion in connection with this practice.

Therefore, plaintiff's Motion for Partial Summary Judgment must be denied.

### B. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on plaintiffs' claims for breach of contract, unjust enrichment/constructive trust and injunctive relief.

### 1. Breach of Contract

As noted above, plaintiff contends defendant breached the PPOk Agreement by updating

the Mini-Anchor system involving DOD claims on a weekly and monthly basis rather than daily. Defendant is entitled to summary judgment with respect to this claim.

The focus of plaintiff's remaining claim for breach of contract is defendant's failure to update AWPs on a "real time" basis. In other words, plaintiff contends the lag time of approximately 30 hours between ESI's receipt of daily updates from First DataBank and its "loading" of the updates onto its own system violates the terms of the Provider Manual and therefore breaches the PPOk Agreement. The current Provider Manual states ESI will update drug cost information on a daily basis. Neither the PPOk Agreement nor the Provider Manual require defendant to update AWPs on a "real time" basis. ESI in fact updates the drug cost information daily, albeit not instantaneously with its receipt of updates from First DataBank. It is undisputed the 30-hour lag time between receipt, verification and loading of First DataBank updates is customary and ordinary in the industry. Further, as noted in Section IV.A. above, the PPOk Agreement gives defendant the right to revise policies and procedures in the Provider Manual and ESI's internal policies and procedures at its sole discretion without plaintiff's consent or notice to plaintiff.

Defendant is entitled to summary judgment on plaintiff's breach of contract claim concerning "real time" updates..

### 2. Unjust Enrichment/Constructive Trust

As the court has previously ruled, plaintiff's claim for unjust enrichment/constructive trust is dependent upon viability of its fraud claim. [Doc. No. 132]. Because defendant's motion for summary judgment does not address the fraud claim, the court cannot grant defendant's summary judgment motion with respect to unjust enrichment/constructive trust.

### 3. Injunctive Relief

Plaintiff seeks entry of an injunction "to require the Defendant to fully, properly, and timely reimburse the Plaintiff and putative class members and that the Defendant be required to properly reimburse the Plaintiff and putative class members using the 'real time' AWP." [Doc. No. 26, ¶65]. To the extent this request is based on alleged breach of contract, this claim must fail. To the extent the request is based on plaintiff's claims of misrepresentation/omission and unjust enrichment/constructive trust, the request survives, inasmuch as those claims remain.

### C. Plaintiff's Motion for Class Certification/ Defendant's Motion to Strike Class Action Allegations

Plaintiff, pursuant to Fed.R.Civ.P. 23(b)(3), seeks certification of the following class:

> All pharmacies and/or other similar entities throughout the United States who entered into a contractual agreement, which was or is effective during the period of five (5) years preceding the filing of this Amended Complaint, and which provided for reimbursement of prescriptions according to a formula which included the AWP with the Defendant and/or its predecessors in interest, their successors in interest, and/or their subsidiaries and/or their related entities but excluding (1) pharmacies and/or other similar entities who are currently in bankruptcy; (2) pharmacies and/or other similar entities whose obligations to Defendant has been modified or discharged in bankruptcy; (3) any governmental agency or entity; and (4) any person or entity who, in accordance with any court approved notice, properly executes and submits a timely request for exclusion from the class.

The proposed class further includes a subclass of:

> All pharmacies located in the state of Oklahoma who have a contractual agreement, which was or is effective during the period of three (3) years preceding the filing of this Amended Complaint, with the Defendant and/or its predecessors in interest, their successors in interest, and/or their subsidiaries and/or their related entities whereby the Defendant is serving as a third party prescription program administrator, who provides for the reimbursement of pharmaceutical goods and services based on a formula that results in reimbursement to the pharmacy at a rate less than the usual and customary price of the pharmaceutical goods and services, and/or denies any pharmacy the opportunity to participate in any third party prescription program offered in Oklahoma in a manner which will restrain the right of a consumer to

> select a pharmacy; but excluding (1) pharmacies and/or other similar entities who are currently in bankruptcy; (2) pharmacies and/or other similar entities whose obligations to Defendant has been modified or discharged in bankruptcy; (3) any governmental agency or entity; and (4) any person or entity who, in accordance with any court approved notice, properly executes and submits a timely request for exclusion from the class.

[Doc. No. 26, ¶32]. Plaintiff seeks class certification with respect to its claims for breach of contract and unjust enrichment. [Doc. 81, p. 15].

Plaintiff's motion must be denied. To the extent plaintiff seeks certification of a class and subclass to pursue breach of contract claims, entry of summary judgment against plaintiff on those claims precludes class certification. This leaves only plaintiff's claim for unjust enrichment. The court finds plaintiff cannot satisfy the requirements of Fed.R.Civ.P. 23(a) for commonality of issues of fact or law, typicality of claims and defenses, or adequate representation of the class. Even if plaintiff can establish conduct by ESI that is consistent with respect to all pharmacies at all relevant times, plaintiff has offered no evidence all members of the class detrimentally relied upon or were damaged by the conduct, nor have they demonstrated plaintiff's claims and ESI's defenses to the claims are typical. *See, Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451 (11th Cir. 1996), *cert. denied* 519 U.S. 1149; *Martin v. Home Depot U.S.A., Inc.,* 225 F.R.D. 198 (W.D. Tex. 2004). Finally, evidence in summary judgment filings indicates plaintiff did *not* rely on alleged misrepresentations or omissions by ESI.[5] Thus, plaintiff has not demonstrated it could "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

---

[5]Inola's owner never reviewed the updated Provider Manual or made any inquiries of anyone at ESI about its internal policies and procedures for AWP updating until after the lawsuit was filed. [Doc. No. 93, Defendant's Statement No. 24, citing Ex. 31, Inola 30(b)(6) deposition.]

Plaintiff's Motion for Class Certification is denied.

## V.  Conclusion

For the reasons set forth above, plaintiff's Motion for Partial Summary Judgment [Doc. No. 84] is denied.  Defendant's Motion for Summary Judgment [Doc. No. 93] is granted with respect to plaintiff's claims for breach of contract and injunctive relief and denied with respect to plaintiff's claim for unjust enrichment and plaintiff's claim for injunctive relief based on its allegations of misrepresentation/omission and constructive trust/fraud.  Plaintiff's Motion for Class Certification [Doc. No. 81] is denied.  Defendant's Motion to Strike Class Allegations [Doc. No. 138] is denied as moot.

Defendant is hereby granted leave to file a supplemental motion for summary judgment as to plaintiff's claims for misrepresentation/suppression and unjust enrichment/constructive trust and the injunctive relief sought pursuant to those claims, on or before April 17, 2009.

ENTERED this 25th day of March, 2009.

_____
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma